No. 14376

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

THE STATE OF MONTANA,

 Plaintiff and Respondent,

-vs-

EDWARD LYLE OSTWALD,

 Defendant and Appellant.

Appeal from:  District Court of the Thirteenth Judicial District,
              Honorable C. B. Sande, Judge presiding.

Counsel of Record:

 For Appellant:

    Robert Stephens, Jr., Billings, Montana
    Dave Kinnard argued, Billings, Montana

 For Respondent:

    Hon. Mike Greely, Attorney General, Helena, Montana
    Richard Larson argued, Assistant Attorney General,
     Helena, Montana
    Harold Hanser, County Attorney, Billings, Montana
    James D. Walen argued, Deputy County Attorney,
     Billings, Montana

                              Submitted:  January 30, 1979

                              Decided:  MAR 7 - 1979

Filed:  MAR 7 - 1979

Thomas J. Kearney
                                          Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant appeals from his conviction of the crimes of burglary and misdemeanor possession of dangerous drugs following a jury trial in the District Court of Yellowstone County.

In the early morning hours of December 26, 1977, when the janitor of the Billings Eagles Club reported for work, he noticed that the club's front door had been pried open. As he approached the building, he heard what he thought was hammering inside. He then left and contacted the authorities.

Shortly after 3:30 a.m., several sheriff's deputies and city police officers were dispatched to the club and deployed around the building. An officer and a deputy approached the front door and glimpsed defendant inside. They called out to him and he began to flee. Defendant ran out the rear of the club where he was apprehended by a deputy sheriff stationed there. Several of the deputies and defendant then returned to the club where a damaged safe and a variety of hand tools were discovered. The tools belonged to defendant.

During the course of the arrest, a deputy sheriff asked defendant what he was doing inside the building. Defendant answered that he did not know. A subsequent inventory search of defendant uncovered two cigarettes which the officers suspected to be marijuana. The substance in the cigarettes was later tested by one of the officers with a "valtox kit" (a selection of chemical reagents, some of which produce a characteristic color when combined with marijuana) with positive results. The suspected substance was never sent to the state crime laboratory for any further testing.

On December 28, 1977, an information was filed in the District Court, Yellowstone County, charging defendant with the crimes of burglary and misdemeanor possession of dangerous drugs.

At his arraignment on January 4, 1978, defendant pled not guilty to both offenses. Trial by jury was scheduled for April 18, 1978.

On the day of the trial, counsel sought to endorse as an additional witness a psychologist who had performed a battery of tests on defendant. The psychologist was to testify that because of the effects of alcohol on defendant, "the disease of alcoholism and the actual brain damage he has suffered through the years", defendant was incapable of acting with a conscious object and could not have had the requisite mental state that is an element of the crime of burglary. The State objected to this proposed testimony on the grounds that it constituted a defense of mental disease or defect and that written notice pursuant to section 95-503, R.C.M. 1947, now section 46-14-201 MCA had not been given. Defendant argued that the testimony of the psychologist would go only to the defense of intoxication for which written notice is not required. The State contended that if an accused relies on a particular alcoholic episode to raise intoxication as a miti-gating factor then he is not required to give notice; if, however, he relies on a defense of alcoholism in a generic sense as a mental disease or defect, as here, then the notice requirement applies. The court reserved its ruling on the State's motion to exclude the expert testimony until after all the other defense witnesses had finished testifying. At that time, the court granted the motion and excluded the psychologist's testimony.

Three of the arresting officers testified at the trial. All testified they observed defendant's manner of speech and ability to carry on a conversation, his coordination and general condition, and each concluded defendant was not intoxicated at the time of his arrest. One deputy testified he smelled a faint odor of alcohol about defendant at the time he was being booked but he too stated defendant appeared sober, that he was coherent

and his coordination was good.

Defense witnesses who had seen defendant during the eighteen hour period prior to his arrest testified in general that defendant was an alcoholic, that he had a history of irrational behavior when he was intoxicated, and that he was intoxicated throughout Christmas day, the day before his arrest. His wife and college age son testified that when defendant left the family home around 2:30 a.m. the morning of the incident, he was in an extreme state of intoxication.

Defendant himself testified that he was an alcoholic. He stated he had been drinking throughout the day prior to his arrest and could remember nothing from approximately noon of that day until he was awakened for breakfast in a jail cell the following morning.

At the close of trial, defendant offered instruction on criminal mischief and criminal trespass, arguing that those offenses were lesser included offenses in the crime of burglary and that the jury must be instructed on them. Those instructions were refused. Defendant also offered several alternative instructions on diminished capacity due to intoxication as a mitigating factor. The court refused defendant's proposed instructions and instead gave instructions regarding the effect of intoxication on criminal responsibility by quoting the applicable Montana statutes.

On April 20, 1978, the jury returned a verdict of guilty against defendant on both counts in the information. Defendant was sentenced to ten years in prison on the burglary charge and one year in county jail on the possession charge, to be served concurrently. Defendant's motion for admittance to bail pending appeal was denied.

Defendant raises three specifications of error in this appeal:

- 4 -

(1) Error in excluding the testimony of defendant's expert witness.

(2) Error in the giving and refusing of jury instructions.

(3) Sufficiency of the evidence to sustain defendant's conviction of possession of marijuana.

In ruling on the motion to exclude defendant's proferred expert testimony, the court cited the Revised Commission Comment to section 95-503, R.C.M. 1947, now section 46-14-201 MCA, which provides in pertinent part: "If the defendant fails to give notice of his intent to rely on a defense of lack of specific intent he does not lose that defense, but he will be limited to 'lay' testimony which generally is not effective for a defense of mental disease or defect." The text of section 95-503, R.C.M. 1947, now section 46-14-201 MCA, reads:

> "(a) Mental disease or defect excluding responsibility is an affirmative defense which the defendant must establish by a preponderance of the evidence.
>
> "(b)(1) Evidence of mental disease or defect excluding responsibility is not admissible unless the defendant, at the time of entering his plea of not guilty or within ten (10) days thereafter or at such later time as the court may, for good cause, permit, files a written notice of his purpose to rely on such defense.
>
> "(2) The defendant shall give similar notice when in a trial on the merits, he intends to rely on a mental disease or defect, to prove that he did not have a particular state of mind which is an essential element of the offense charged. Otherwise, except on good cause shown, he shall not introduce in his case in chief, expert testimony in support of that defense.
>
> "(c) When the defendant is acquitted on the ground of mental disease or defect excluding responsibility, the verdict and the judgment shall so state."

In addition, there is another separate statute regarding the notice requirement. Section 95-1803(3)(a), R.C.M. 1947, now section 46-15-301(2)(a) MCA provides:

- 5 -

> "For purpose of notice only and to prevent sur-
> prise, the defendant shall furnish to the prosecu-
> tion and file with the clerk of the court, at the
> time of entering his plea of not guilty or within
> 10 days thereafter or at such later time as the court
> may for good cause permit, a statement of intention
> to interpose the defense of mental disease or defect,
> self-defense, or alibi."

Defendant argues that he was not required to give notice because he was proceeding under section 94-2-109, R.C.M. 1947, now section 45-2-203 MCA, which has no notice requirement. That statute provides:

> "A person who is in an intoxicated or drugged
> condition is criminally responsible for conduct
> unless such condition is involuntarily produced
> and deprives him of his capacity to appreciate
> the criminality of his conduct or to conform his
> conduct to the requirements of law. An intoxicated
> or drugged condition may be taken into consider-
> ation in determining the existence of a mental
> state which is an element of the offense."

Defendant's purpose in offering the testimony of the psychologist was to demonstrate that defendant, because of his history of alcoholism and alcoholic personality, would be more prone on a given occasion of intoxication to be deprived of the ability to appreciate the criminality of his conduct than would a person who had no such attributes. The psychologist could not have testified to defendant's intoxication at the time of the commission of the offenses with which he was charged because the psychologist did not see him at that time. The expert testimony could only have gone to the likelihood that if defendant had in fact been drinking heavily on the day of the crime, then the disease of alcoholism from which he suffers would make it more probable that his intoxication would prevent him from acting knowingly and purposely within the meaning of the statute defining the offense of burglary. Section 94-6-204, R.C.M. 1947, now section 45-6-204 MCA. We hold that the defense raised by this theory falls within the purview of the statutes requiring notice.

The question of whether the defense of intoxication is

- 6 -

elevated by an offer of expert testimony on a defendant's alcoholism in general to a defense of mental disease or defect requiring notice is a novel one. (We note at the outset that intoxication, strictly speaking, is not really a "defense", but "merely a fact which the jury can consider in determining the existence of a particular mental state". Commission Comment, section 94-2-109, R.C.M. 1947, now section 45-2-203 MCA. The cases and commentaries, however, speak of "the defense of intoxication", and we incorporate that term herein with its qualified meaning under Montana law.) In the only case we have found specifically addressing the issue of notice of the defense of intoxication, the court said: "The statute requires notice when the defense is based on alibi or insanity, and not when intoxication is used to negate specific intent. This provision would be applicable to a defense of intoxication only where defendant claimed insanity due to intoxication." People v. Cummins (1973), 45 Mich.App. 601, 207 N.W.2d 150, 151.

Cummins, supra, was a case in which an assault conviction was reversed because a defendant who had not given notice was precluded from raising intoxication as a mitigating factor. That is not the case here. In this case, numerous defense witnesses testified both as to defendant's alleged intoxication at the time of the crime and as to his alcoholism over the years. The testimony excluded, in the words of appellant's brief, would have gone to "the permanent damage done to defendant by his abuse of alcohol." We hold that where, as here, the defense of intoxication shifts to a defense based on expert testimony as to the long term effects of alcoholism, then it becomes a defense of mental disease or defect within the purview of the statutes requiring notice.

Defendant argues that even if the notice requirement applies, the statutes allow for expert testimony despite noncompliance on

- 7 -

a showing of good cause. Good cause is alleged in defense counsel's confusion over the distinction between intoxication at a specific time and alcoholism as a mental disease or defect. Defendant argues that any possible prejudice to the State which could have been caused by the unexpected testimony of his expert witness could easily have been cured by the granting of a continuance, and that it was therefore an abuse of discretion for the District Court to grant the State's motion for exclusion.

We note that during oral argument of this appeal, defense counsel admitted having the information on which the expert was going to testify for some five weeks prior to trial, but did not make it available to the State nor endorse the psychologist as a witness until the day trial started. Further, it appears that the proferred testimony was of a nature that could not have reasonably been evaluated and countered in a short time. Under these circumstances, we find no abuse of discretion in the trial court's ruling.

In addition, defendant argues that his Sixth Amendment right to present a defense was violated by the exclusion of the expert testimony. Defendant's contentions in this regard are unclear. He cannot argue that he was precluded from presenting the defense of intoxication because numerous lay witnesses testified on that issue. Expert testimony is not required to establish the defense of intoxication. By raising this Sixth Amendment claim, defendant apparently is attempting to force the court into a contradictory position. Nowhere does he claim that he was, in fact, raising a defense of mental disease or defect. However, he argues, if we conclude that such is the gist of his theory and hold that the notice requirement applies, then his Sixth Amendment rights are violated if we invoke his failure to give notice to bar him from presenting the defense of mental disease or defect. We find defendant's contentions to be without merit for the same reason we held there was no abuse of discretion in

exclusion of the expert testimony; that is, that defendant attempted to spring this surprise witness on the State at the last moment rather than following the acknowledged customary practice in the thirteenth judicial district of making medical reports available to the State prior to trial. Under the circumstances present here, we hold that the exclusion of the expert testimony does not constitute a violation of defendant's Sixth Amendment rights.

We now turn to the second issue on appeal; the alleged errors in instructions. Defendant argues that his intoxication negated the existence of the purpose to commit an offense which is an element of the crime of burglary, and that therefore he could only be convicted of mere criminal trespass or criminal mischief. Defendant cites State v. Bouslaugh (1978), ____Mont. ____, 576 P.2d 261, 262, 35 St.Rep. 319, 321 for the proposition that " . . . it is a fundamental rule that the court's instructions should cover every issue or theory having support in the evidence." Defendant also emphasizes language from Bouslaugh where we cited State v. Buckley (1976), ____Mont.____, 557 P.2d 283, 33 St.Rep. 1204, to the effect that a defendant is entitled to instructions on lesser included offenses if any evidence exists in the record which would permit the jury to rationally find him guilty of a lesser offense and acquit him of a greater.

We agree with these principles. It is also a fundamental rule, however, that " . . . where an accused is either guilty of the offense charged or is entitled to an acquittal . . . an instruction on the lower offense is not necessary and is properly refused." 23A C.J.S. Criminal Law §1288(c). The court may not be put in error for refusing to instruct on a lesser offense in such cases. Bouslaugh, supra; State v. Baugh (1977), ____Mont. ____, 571 P.2d 779, 34 St.Rep. 1315; State v. McDonald (1915),

51 Mont. 1, 149 P. 279.

The offense of criminal trespass includes the element "knowingly". Section 94-6-203, R.C.M. 1947, now section 45-6-203 MCA. The offense of criminal mischief includes the elements "knowingly or purposely". Section 94-6-102, R.C.M., now section 45-6-101 MCA. If defendant's intoxication defense had been believed by the jury, he could not have been convicted of burglary, criminal trespass, or criminal mischief. He was, therefore, either guilty of the offense charged or entitled to an acquittal. We find no error.

Defendant also alleges error in the refusal of his offered instructions on diminished capacity due to intoxication. Defendant offered several alternative instructions, each of which contained language to the effect that where a defendant is charged with a crime which requires a certain conscious object or mental state, if evidence of defendant's intoxication raises a reasonable doubt that he did not have that mental state, he cannot be found guilty of the crime. The court instead gave instructions in statutory language for definitions of knowingly and purposely, and in the language of section 94-2-109, R.C.M. 1947, now section 45-2-203 MCA, concerning the effect of intoxication on criminal responsibility. In addition, the court instructed the jury that where knowledge and purpose are elements of a crime, a mental disease or defect or physical condition, from whatever cause, which might prevent one from knowing or having the purpose essential to the crime is to be considered.

"In determining the effect of given instructions, all instructions must be considered as a whole, and if they fairly tender the case to the jury, the fact that one or more instructions standing alone is not as full or as accurate as it might have been is not reversible error." State v. Reiner (1978), ____Mont.____, 587 P.2d 950, 953-954, 35 St.Rep. 1861, 1864, citing State v. Caryl (1975), 168 Mont. 414, 543 P.2d 389, and earlier cases.

- 10 -

Having reviewed the instructions given here, we conclude that in their entirety they properly stated the law and fairly tendered the case to the jury. This specification of error is without merit.

The final issue on this appeal goes to the sufficiency of the evidence to support defendant's conviction for criminal possession of marijuana. Defendant moved for a directed verdict of acquittal on that charge on the grounds that the "valtox kit" test used to identify the suspected substance is not specific for marijuana and therefore not conclusive. He contends that because the substance was never sent to the crime lab for positive identification, the State has not met its burden of proving beyond a reasonable doubt that it was in fact marijuana. The State concedes that the "valtox kit" test is not specific for marijuana but argues that when the test results are considered together with the testimony of the officer who performed the test, a prima facie showing was made that the substance was marijuana. The officer testified that his identification of the substance was based not only on the test results, but also on the characteristic odor of marijuana with which he was familiar from past experience in possession cases.

We have reviewed many cases involving the burden of proving beyond a reasonable doubt the identity of a substance alleged to be marijuana. In only two of those cases do we find language indicating that absolute chemical identification is required to meet this burden of proof, and in both cases that language was dicta only. State v. Nelson (1977), ____Mont.____, 560 P.2d 897, 34 St.Rep. 80; State v. Wind (1973), 60 Wis.2d 267, 208 N.W.2d 357. On the other hand, numerous cases hold that marijuana is not difficult to characterize without chemical analysis and that testimony of officers who have had experience searching for and identifying marijuana is sufficient. Cf. Cory v. State (1975),

Okl.Cr. 543 P.2d 565; State v. Maupin (1975), 42 Ohio St.2d 473, 330 N.E.2d 708. A good general discussion of the cases in the area appears at Annot. 75 ALR3d 717.

In our opinion, it is the far better practice to require that the suspected substance be identified by a state chemist to insulate against attacks which might be made on the reliability of the tests used to identify the marijuana. Cf. State v. Paulson (1975), 167 Mont. 310, 538 P.2d 339. In this case, however, no such attacks were made. Defense counsel here objected to introduction of the cigarettes into evidence on the grounds there was no showing they contained a prohibited substance, but he did not voir dire on the deputy's qualifications to identify marijuana or introduce any testimony or evidence to cast doubt on the efficacy of the valtox kit test. The identity of the substance went to the jury virtually without contrary evidence. Where, as here, there is credible evidence before the jury that the substance is marijuana and they have been properly instructed on the burden of proof, the defendant cannot complain.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

_____
Hon. Joseph B. Gary, District
Judge, sitting in place of Mr.
Justice Gene B. Daly.

- 12 -