PEOPLE v CUMMINGS

Docket No. 199226. Submitted March 10, 1998, at Lansing. Decided March 31, 1998, at 9:25 A.M. In lieu of granting leave to appeal, the Court of Appeals judgment is reversed, and the judgment of the Jackson Circuit Court is reinstated, 458 Mich 876.

Brian K. Cummings was convicted by a jury in the Jackson Circuit Court, Charles A. Nelson, J., of involuntary manslaughter. The charge arose from a shooting death that occurred when the defendant intentionally discharged his firearm when he thought he saw a deer while the defendant was positioned in a hunting spot on the opening day of the firearm deer hunting season. The shooting occurred approximately fourteen minutes before the official start of the hunting season. Therefore, the discharge of the firearm was in violation of a regulation of the Department of Natural Resources and a misdemeanor. The defendant appealed.

The Court of Appeals *held*:

1. Involuntary manslaughter is a general intent crime, not a specific intent crime as alleged by the defendant.

2. The jury instructions adequately set out what was necessary to obtain a conviction of involuntary manslaughter on the basis of a gross negligence theory. The instructions properly defined gross negligence and did not contain any errors requiring reversal.

3. Because evidence sufficient to convict the defendant was presented at the trial, any error that may have occurred with regard to the determination to bind over the defendant for trial was harmless.

4. The trial court erred in refusing the defendant's request for a jury instruction regarding the lesser offense of careless, reckless, or negligent discharge of a firearm causing death. Here, carelessness, recklessness, or negligence did cause the firearm to be "discharged so as to kill or injure another person," as required for a conviction under MCL 752.861; MSA 28.436(21). The conviction must be vacated and the matter must be remanded for entry of a conviction of the lesser offense and resentencing or, if the prosecution desires, a retrial on the charge of involuntary manslaughter.

5. Because accident is not a defense to the general intent crime of involuntary manslaughter, the trial court properly did not instruct the jury regarding the defense of accident.

Vacated and remanded.

1. HOMICIDE — INVOLUNTARY MANSLAUGHTER — INTENT — ACCIDENT.

Involuntary manslaughter is a general intent crime; the defense of accident applies only to specific intent crimes and therefore does not apply to involuntary manslaughter (MCL 750.321; MSA 28.553).

2. HOMICIDE — INVOLUNTARY MANSLAUGHTER.

Involuntary manslaughter may be premised on criminal negligence where a defendant commits an unlawful act that is malum prohibitum, i.e., an act that is not inherently immoral, but becomes so because its commission is expressly forbidden by positive law; gross negligence is the equivalent of criminal negligence and is only necessary for a conviction of involuntary manslaughter if an intent to injure cannot be established; an intent to injure cannot be established by the malum prohibitum offense (MCL 750.321; MSA 28.553).

3. CRIMINAL LAW — JURY INSTRUCTIONS — LESSER INCLUDED OFFENSES.

Jury instructions regarding both involuntary manslaughter and the lesser offense of careless, reckless, or negligent discharge of a firearm causing death should be given where the evidence at trial could support a conviction on either charge (MCL 750.321, 752.861; MSA 28.553, 28.436[21]).

4. HOMICIDE — CARELESS, RECKLESS, OR NEGLIGENT DISCHARGE OF FIREARM CAUSING DEATH.

A defendant may be convicted of the careless, reckless, or negligent discharge of a firearm so as to kill or injure another person even though the firearm was purposely discharged (MCL 752.861; MSA 28.436[21]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John G. McBain*, Prosecuting Attorney, and *Jerrold Schrotenboer*, Chief Appellate Attorney, for the people.

*Sinas, Dramis, Brake, Boughton & McIntyre, P.C.* (by *Kenneth G. McIntyre*), for the defendant.

Before: FITZGERALD, P.J., and HOOD and SAWYER, JJ.

PER CURIAM. Defendant was convicted of involuntary manslaughter, MCL 750.321; MSA 28.553, following a jury trial. He was sentenced to 365 days' imprisonment and ordered to pay $11,793 in restitution. He appeals as of right. We vacate defendant's conviction and remand for further proceedings consistent with this opinion.

The incident that gave rise to the charges in this case occurred on November 15, 1995, the opening day of firearm deer hunting season in Michigan. Early that morning, defendant, his family, and a family friend arrived at the property where they were going to hunt. Defendant and his daughter thereafter separated from the rest of the group and went to find a hunting "spot" together. At approximately 6:45 A.M., before the official 6:59 A.M. start of the hunting season, defendant, who was already positioned for hunting, heard something. He looked up, thought he saw a deer with antlers, and fired twice. After the second shot, defendant heard the victim yell and fall to the ground. It was dark at the time the shots were fired. The victim died as a result of the gunshot wounds inflicted by defendant.

I

Defendant argues that the trial court improperly instructed the jury with regard to the involuntary manslaughter charge, specifically that the trial court offered an erroneous gross negligence instruction and improperly instructed the jury regarding the misdemeanor-manslaughter rule. We disagree with defendant's arguments.

Jury instructions are reviewed in their entirety to determine if there was error. *People v Daniel*, 207

Mich App 47, 53; 523 NW2d 830 (1994). Even if the instructions are imperfect, no error is created if the instructions fairly present the issues to be tried and sufficiently protect the defendant's rights. *Id.* The instructions must include all the elements of the crime charged and must not exclude any material issues, defenses, or theories if there is evidence to support them. *Id.*

At the outset, we note that a considerable portion of defendant's argument is premised on the erroneous legal conclusion that involuntary manslaughter is a specific intent crime. It is not. Involuntary manslaughter is a general intent crime. *People v Wilkins,* 184 Mich App 443, 446; 459 NW2d 57 (1990); *People v Kelley,* 21 Mich App 612, 619; 176 NW2d 435 (1970). For that reason, a substantial part of defendant's argument is without merit solely on that basis.[1]

"Involuntary manslaughter is a catch-all concept including all manslaughter not characterized as voluntary." *People v Datema,* 448 Mich 585, 594; 533 NW2d 272 (1995). Within the definition of involuntary manslaughter, there are three different theories that can lead to a conviction. *Id.* at 595-596. Involuntary manslaughter is defined as the killing of another without malice and unintentionally, but (1) in doing some unlawful act neither amounting to a felony nor naturally tending to cause death or great bodily harm, or (2) in negligently doing some act lawful in itself, or (3) by the negligent omission to perform a legal duty.

---

[1] We also note that the trial court incorrectly instructed the jury that involuntary manslaughter is a specific intent crime. This error does not require reversal, however, because we find that the jury instructions as a whole fairly presented the issues, set out the elements of the crime, and protected the defendant's rights.

*Id.*; *People v Beach*, 429 Mich 450, 477; 418 NW2d 861 (1988). The theories are not mutually exclusive, and, in fact, multiple theories may be appropriate in certain circumstances. *Datema, supra* at 596. Under the first theory, a misdemeanor is elevated to involuntary manslaughter under certain circumstances:

> An unlawful act committed with the intent to injure or in a grossly negligent manner that proximately causes death is involuntary manslaughter. In the former instance the defendant has consciously intended to injure in wanton disregard of the safety of others: conduct which if it causes death is (at least) involuntary manslaughter. In the latter instance, criminal liability is imposed because, although the defendant's acts are not inherently wrong, the defendant has acted or failed to act with awareness of the risk to safety and in wilful disregard of the safety of others.
>
> "[P]ains should be taken not to define [gross negligence] in terms of a wanton *and* wilful disregard of a harmful consequence known to be likely to result, because such a state of mind goes beyond negligence and comes under the head of malice."
>
> Unlike murder, involuntary manslaughter contemplates an unintended result and thus requires something less than an intent to do great bodily harm, an intent to kill, or the wanton and wilful disregard of its natural consequences. An intent to injure or gross negligence strikes the appropriate balance in this crime, which by definition criminalizes an unintended result, i.e., death. [*Id.* at 606 (citations omitted; emphasis in the original).]

Where a defendant commits an unlawful act that is malum prohibitum, involuntary manslaughter may be premised on criminal negligence. *Id.* at 597. Malum prohibitum is defined as an act that is not inherently immoral, but becomes so because its commission is expressly forbidden by positive law. *Id.* at 597, n 13. Gross negligence is the equivalent of criminal negli-

gence and is only necessary if an intent to injure cannot be established. *Id.* at 604-605.

Here, defendant committed a malum prohibitum offense. He discharged his firearm before it was one-hour before sunrise on November 15, 1995, in violation of a Department of Natural Resources regulation that was authorized by MCL 324.40107; MSA 13A.40107. A person who violates a DNR order issued pursuant to that statute is guilty of a misdemeanor. MCL 324.40118; MSA 13A.40118. An intent to injure cannot be established by the malum prohibitum offense. Therefore, in order to find defendant guilty of involuntary manslaughter, the jury had to find that defendant acted with gross negligence. The instruction given by the trial court was as follows:

> The Defendant is charged with the crime of involuntary manslaughter. To prove this charge, the Prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> First, that the Defendant caused the death of [the victim], that is, that [the victim] died as a result of the discharge of a firearm while hunting prior to one-half hour before sunrise.
>
> Second, in doing the act that caused [the victim's] death, the Defendant acted in a grossly negligent manner.
>
> Third, that the Defendant caused the death without lawful excuse or justification.
>
> Gross negligence means more than carelessness. It means willfully disregarding the results to others that might follow from an act or failure to act. In this case, the act alleged by the Defendant is the discharge of a firearm prior to one-half hour before sunrise contrary to Michigan statute and administrative order.
>
> In order to find the Defendant was grossly negligent, you must find each of the following three things beyond a reasonable doubt:

> First, that the Defendant knew of the potential danger to another by the discharge of a firearm prior to one-half hour before sunrise; that is, he knew that there was a situation that required him to take ordinary care to avoid injuring another person.
>
> Second, that the Defendant could have avoided injuring another by the use of ordinary care or by using ordinary care.
>
> Third, that the Defendant failed to use ordinary care to prevent injuring another when, to a reasonable person, it would have been apparent that the discharge of a firearm prior to one-half hour before sunrise was likely to result in serious injury to another person.

The instruction adequately set out what was necessary to obtain a conviction for involuntary manslaughter on the basis of a gross negligence theory. See *People v Zak*, 184 Mich App 1, 7; 457 NW2d 59 (1990). Moreover, the trial court properly defined gross negligence. We note that with the exception of reminding the jury of the act alleged, the gross negligence instruction given is identical to CJI2d 16.18. In addition, the trial court's interjecting the nature of the act into the gross negligence definition did not change the meaning of that definition, nor did it elevate the instruction into an improper misdemeanor-manslaughter instruction. Similarly, the involuntary manslaughter instruction that was given was almost identical to the standard instruction, CJI2d 16.10. The jury was fairly apprised of the issues to be tried, and the defendant's rights were sufficiently protected by the instructions as given. The instructions did not contain any errors requiring reversal.

II

Defendant also argues that the trial court should have granted his motion to quash the information. He claims that the trial court improperly applied the misdemeanor-manslaughter rule to this case where the prosecutor was pursuing a gross negligence theory and not a misdemeanor-manslaughter theory. He further claims that if the trial court had analyzed the preliminary examination evidence under a gross negligence standard, it should have quashed the information. Because sufficient evidence was presented at trial to convict defendant, any error that may have occurred in the bindover is harmless. *People v Dunham*, 220 Mich App 268, 276-277; 559 NW2d 360 (1996). Accordingly, reversal is not required with regard to defendant's claim that the trial court should have granted his motion to quash on the basis of an improper determination with regard to the bindover.

III

Defendant's next argument is that the facts offered during trial could have supported a conviction for the careless, reckless, or negligent discharge of a firearm causing death, MCL 752.861; MSA 28.436(21). He argues that the trial court erred in refusing his request for an instruction regarding this lesser offense. We agree.

MCL 752.861; MSA 28.436(21) provides:

> Any person who, because of carelessness, recklessness or negligence, but not wilfully or wantonly, shall cause or allow any firearm under his immediate control, to be discharged so as to kill or injure another person, shall be guilty of a misdemeanor . . . .

Previously, this statute has been interpreted in different circumstances. In *People v Dabish*, 181 Mich App 469, 474; 450 NW2d 44 (1989), the defendant intended to aim *and* fire at the victim. The instruction regarding careless, reckless, and negligent use of a firearm was therefore precluded. In *People v Jones*, 395 Mich 379, 384-385, 390; 236 NW2d 461 (1975), the defendant testified that he did not intend to shoot the weapon and that it had discharged by accident. The Court found that the instruction was appropriate under those circumstances. *Id.* at 386. Similarly, in *People v Rochowiak*, 416 Mich 235, 238; 330 NW2d 669 (1982), where the defendant argued that his capacity to understand his action was diminished, the instruction was appropriate. This statute has not been interpreted in the circumstance where a defendant intentionally discharges his weapon, but has no known or intended victim. Thus, we are presented with an issue of first impression.

Statutory interpretation is a question of law subject to review de novo. *People v Pitts*, 222 Mich App 260, 265; 564 NW2d 93 (1997).

> The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. The first criterion in determining intent is the specific language of the statute. The Legislature is presumed to have intended the meaning it plainly expressed. Thus, statutory language should be construed reasonably, keeping in mind the purpose of the act. If the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted. If reasonable minds can differ with respect to the meaning of a statute, however, judicial construction is appropriate. The court must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes

the purpose of the statue. [*Id.* at 265-266 (citations omitted).]

Every word and phrase should be given its plain and ordinary meaning unless otherwise defined. *People v Williams*, 205 Mich App 229, 233; 517 NW2d 315 (1994).

The statute focuses on a defendant's carelessness, recklessness, or negligence in discharging a firearm *so as to kill or injure another person.* In this case, the firearm at issue was purposely discharged. Clearly carelessness, recklessness, or negligence did not cause the discharge. However, carelessness, recklessness, or negligence did cause the firearm to be "discharged so as to kill or injure another person . . . ." Giving meaning to all of the words in the statute, we find that defendant properly requested an instruction regarding the lesser misdemeanor charge pursuant to MCL 752.861; MSA 28.436(21). Moreover, we note that it is proper to instruct regarding both involuntary manslaughter and careless discharge if the proofs or evidence at trial could support a conviction on either charge. See *Rochowiak, supra* at 243, 247; *People v Hendricks*, 446 Mich 435, 444-445; 521 NW2d 546 (1994).

In this case, both the involuntary manslaughter statute and the careless discharge of a firearm statute have a common purpose, relating to the protection against killing or injury to another person. See *Rochowiak, supra* at 242-243. Further, conviction on the involuntary manslaughter charge against defendant required proof of defendant's gross negligence. Necessarily, proof that was sufficient to support a conviction of the proposed misdemeanor, the lesser offense, was presented as part of the showing of the

greater offense. Therefore, an instruction regarding the misdemeanor was appropriate. *Hendricks, supra* at 444-446.

Where a trial court improperly fails to include an instruction regarding a lesser included offense, the remedy is to remand for entry of a conviction of the lesser included offense and for resentencing or, if the prosecution desires, for a retrial on the charge for which the defendant was convicted. *People v Bryan*, 92 Mich App 208, 225-226; 284 NW2d 765 (1979). Accordingly, we vacate the conviction and remand for further proceedings consistent with this opinion.

IV

Finally, defendant claims that the trial court erred in failing to instruct the jury regarding the defense of accident. We disagree.

As previously noted, involuntary manslaughter is a general intent crime. *Wilkins, supra; Kelley, supra.* Because involuntary manslaughter is not a specific intent crime, accident is not a defense. *People v Hess*, 214 Mich App 33, 38-39; 543 NW2d 332 (1995). Therefore, the trial court properly did not instruct the jury regarding the defense of accident.

Vacated and remanded for either entry of a conviction of the lesser charge of careless, reckless, or negligent discharge of a firearm causing death or, if the prosecution wishes, for retrial on the charge of involuntary manslaughter. We do not retain jurisdiction.